Pennsylvania Turnpike Commission, Appellant,
*v.* Fulton County.

518

Argued March 13, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Henry E. Harner*, Counsel, with him *John L. Sweezy*, Assistant Counsel, for Pennsylvania Turnpike Commission, appellant.

*George S. Black*, with him *Merrill W. Kerlin*, and *Black and Davison*, for appellee.

OPINION BY MONTGOMERY, J., June 15, 1961:

The Pennsylvania Turnpike Commission has taken this appeal from the action of the court below dismissing its appeal from the assessment of real estate taxes.

On March 10, 1959, the Fulton County Board of Tax Revision and Assessment assessed for local taxation for the year 1959, certain parcels of land owned by the commission in Taylor and Dublin Townships on the basis that such lands were not being used for turnpike purposes. From this assessment the commission filed an appeal with the board and on April 30, 1959, the appeal was dismissed. The commission then filed a petition in the court below in the nature of an

appeal from the order of the Fulton County Board of Tax Revision and Assessments. At the hearing on this appeal, it was established that ten parcels of land with a total acreage of 879.55, which had been assessed by the County of Fulton at a valuation of $11,840.00, were all located beyond the turnpike right-of-way fence; that none of the property in question was presently used for turnpike purposes although acquired at the time of construction of the original turnpike at or about 1940; that the said lands were not used for interchanges, restaurants, service station facilities, maintenance buildings or other related turnpike operations and that, although certain parcels were considered for possible uses in the future, the Turnpike Commission had no present plans to use the lands in connection with the Pennsylvania Turnpike. On November 8, 1960, the court below dismissed the appeal.

On this appeal as well as in the court below the Pennsylvania Turnpike Commission contends that (1) lands of the commission outside the 200-foot right-of-way and not used for road, interchanges or other related turnpike operations are not subject to assessment and payment of taxes, and (2) that the assessments imposed by the County of Fulton are unfair and unreasonable. The second reason has been abandoned and will not be discussed in this opinion.

It is generally true that all property not clearly exempt from taxation and within the purview of taxing statutes is subject to tax. Article IX, section 1 of the Constitution of Pennsylvania provides that "the General Assembly may, by general laws, exempt from taxation public property used for public purposes. . . ." It is also clear that a municipality cannot tax State-owned property unless it can point to a statute clearly authorizing the imposition of such tax. The Act of May 21, 1937, P. L. 774, 36 P.S. 652-a et seq., which created the Turnpike Commission, constituted it an instrumentali-

ty of the Commonwealth performing an essential governmental function. Section 11 of said Act, 36 P.S. section 652-k, provides that ". . . the commission shall not be required to pay any taxes or assessments on any property acquired or used by it for the purposes provided in this act, . . ." The commission contends, therefore, that the above quoted statute prohibits a governmental subdivision to tax any land used *or* acquired by it. In effect, the commission contends that regardless of the use such property may be put to by the commission, once land has been acquired by it, no taxing body may impose any tax on such land since it is an instrumentality of the Commonwealth and performing an essential governmental function.

The commission frankly concedes that the land involved in this appeal was not necessary for or used in the construction of the turnpike, and that said parcels were acquired in order to reduce the costs and expedite acquisition of other parcels used for said purposes. It contends that all the parcels generally lend themselves to prospective uses for service station sites, parks, rest areas and dumps for paving operations and that such uses were likely, although no definite plan therefor has been adopted for such uses. None of the land assessed is included within the turnpike right-of-way of 200 feet. There is no certainty from this record that any of the land will be used in connection with the Pennsylvania Turnpike or for any other public purpose.

In *West View Borough Municipal Authority Appeal,* 381 Pa. 416, 419, 113 A. 2d 307, 309, our Supreme Court said: "There must, however, always be kept in mind the provisions of Article IX, section 1, of the Constitution that 'the General Assembly may . . . exempt from taxation public property *used for public purposes,* . . .' and section 2, that 'All laws exempting property from taxation, other than the property above enumerated shall be void.' To qualify, therefore, for

tax exemption it must be established that the property is being used for a public purpose and, while a declaration by the legislature as to the existence of a public purpose is entitled to prima facie acceptance as to its correctness, it is not conclusive, it being a judicial question for the ultimate determination of the courts as to whether a proposed use is a public one: . . . ." It is clear, therefore, that before any property may be exempt from taxation it must be used for public purposes. *Moon Township Appeal,* 387 Pa. 144, 127 A. 2d 361. The legislature, in granting tax exemption to the commission, specifically provided that it shall not be required to pay any tax on any property acquired or used by it "for the purposes provided in this act." As we view it, it was not the intention of the legislature to grant tax immunity to the commission on all property acquired by it regardless of whether such property be used for turnpike purposes or not, but only on land acquired and used for the purposes provided in this act. It is admitted that the land under assessment was not even acquired for turnpike purposes. In the *West View* case, supra, the Court stated at page 422: "Whatever plans the borough may have for the use of the floor in the future it is the present and not an indefinite, prospective use which controls: . . . ." The reasoning is equally applicable here as it applies to any prospective uses contended for by the commission. The fact of nonuse does not help appellant. *Easton v. Koch,* 152 Pa. Superior Ct. 327, 31 A. 2d 747.

Neither does it follow that since the commission is an instrumentality of the Commonwealth, it is thereby vested with all of the immunities of the Commonwealth. In *Lichtenstein v. Pennsylvania Turnpike Commission,* 398 Pa. 415, 158 A. 2d 461, the question raised was whether the commission was relieved from the payment of interest on an award of viewers. The commission contended that as an instrumentality of the Common-

wealth it was not liable for the payment of interest since the Commonwealth itself could not be charged therefor. The Court, in dismissing this contention, said at page 419: "But, equally so is every legislatively ordained municipal corporation, school district or political subdivision. School districts especially afford notable examples of instrumentalities of the Commonwealth engaged in the performance of an essential governmental function, the responsibility for the discharge whereof is laid primarily on the Commonwealth by the Constitution, which declares that the General Assembly shall provide for the maintenance and support of a thorough and efficient public school system. . . ."

This case is not governed by the cases relied upon by the commission and the rule applied in the cases of *Commonwealth of Pennsylvania State Employes' Retirement System v. Dauphin County*, 335 Pa. 177, 6 A. 2d 870; *Commonwealth v. Dauphin County*, 354 Pa. 556, 47 A. 2d 807; *Commonwealth Department of Public Assistance v. Schuylkill County*, 361 Pa. 126, 62 A. 2d 922. In those cases the Commonwealth or an agency thereof acquired title to real estate to protect a mortgage investment or a lien to secure repayment of public assistance, and it was held that the real estate was public property used for a public purpose since the acquisition was merely a change in the form of investment from money to land and that the original investment or advancement of money was a proper governmental function. In the present case, the acquisition of real estate by the commission was not essential to the construction of the turnpike and such acquisition and holding for over 20 years had no connection whatever with the maintenance or operation of the turnpike.

We, therefore, conclude that the land here involved, not being used for any public purpose, is subject to tax assessment by Fulton County.

The order of the court below is affirmed.